UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | NUMBER |
| **CHARLES DUPRE** | **02-10010** |
| DEBTOR | CHAPTER 7 |
| | |
| **MARTIN A. SCHOTT, TRUSTEE** | ADV. NUMBER |
| PLAINTIFF | **02-1022** |
| V. | |
| **CHARLES DUPRE** | |
| DEFENDANT | |

## MEMORANDUM OPINION

This matter came before the Court on the Complaint Objecting to the Discharge of Debtor filed by the chapter 7 trustee, Martin Schott. The Court heard argument and the testimony of witnesses and received documentary evidence at a trial on July 22, 2002. Considering the arguments, the evidence offered, the memoranda submitted, the record in the case and the applicable law, the Court enters the following Memorandum Opinion.[1]

### I. FACTS

The debtor filed a chapter 7 petition on January 4, 2002 and attended the meeting of

---

[1] This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052.

creditors under 11 U.S.C. §341 on February 7, 2002.[2] On his original Schedule B, which is a list of a debtor's personal property, the debtor listed certain items with a total value of $1,260.00 as his household goods and furnishings.[3] The only other item listed on Schedule B was a 1995 VW Jetta. The debtor claimed all these household items as exempt under Louisiana law. At the meeting of creditors, the debtor testified to the accuracy and completeness of his schedules and statement of affairs. However, because the trustee apparently had doubts concerning the truthfulness and accuracy of the debtor's list of assets, he visited the debtor's residence on February 7, 2002 to inventory the debtor's property, as he announced he would at the §341 meeting.

The debtor filed amended schedules on February 15, 2002, after the trustee inventoried his property. The debtor's amended Schedule B listed all of the same household items included in the original schedules, but added a few others and provided some descriptive details.[4] The total value of assets on the amended schedules is $1,385.00. The amended Schedule B also added a checking account at Whitney National Bank and two cats. All the household items were listed as community property except the kitchen table and chairs, which the debtor listed as his wife's. All these items also were claimed as

---

[2] The debtor is not a stranger to the bankruptcy system, having received a chapter 7 discharge in 1995. Nor is he unsophisticated or uneducated. He graduated from high school and college and was self-employed as an insurance salesman for over twenty years.

[3] Those items were: one refrigerator - 15 years or older; one washer and one dryer - 15 years or older; one deep freezer - 20 years or older; one bedroom set - 15 years or older; pots and pans - 15 years or older; one living room set; two television sets - 10 years or older; one VCR - 15 years or older; one stereo system- 15 years or older.

[4] The additional items and information provided on the amended schedules were: the bedroom set includes a bed, dresser and two night stands; the living room set includes a couch, two end tables, a coffee table, a chair with footstool and a rocking chair/recliner; there is a kitchen table and there are six chairs.

exempt on the amended schedules, along with assorted kitchen items, towels and bed linens and a wooden entertainment center/bookcase.[5] At trial, the debtor testified that he had read and signed his original schedules and statement of affairs, but he admitted that the listing of assets on the original schedules was not complete. The trustee's inventory, attached as an exhibit to the Complaint, is considerably more detailed than either of the debtor's lists and includes many items not listed on the schedules, including items located in the living room, three bedrooms, the hall, the bath, the kitchen, the attic, a tool shed and on the outside deck.

The trustee offered into evidence at trial the transcript of the debtor's testimony at the meeting of creditors. Though the debtor's responses to many of the questions were incomplete, evasive and contradictory, he eventually declared that he had listed all his household goods and furnishings on the original schedules. There was some testimony about a separate property agreement between him and his wife, who is not a debtor. In fact, the evidence showed that the debtor on July 12, 1999 recorded a donation to his wife of his interest in their marital residence. Also in evidence is the May 9, 2001 judgment of the East Baton Rouge Parish Family Court terminating the community between the debtor and his wife and separating their property. There is no evidence of a listing of the separate property of the debtor or of his wife. Indeed, the debtor stated at the creditors' meeting that, when he filed his chapter 7 petition, his wife's separate property comprised the house itself and her car. Yet, at trial the debtor claimed that some of the household goods and furnishings on the trustee's list were his wife's separate property.

---

[5] The listed exempt kitchen items were: a toaster, a spice rack, knives, eating utensils, plates, dishes, canisters, a bread box, a blender, a mixer, a coffeepot, a cookie jar, wooden decorator items and metal copper decorator items.

There was also testimony at the §341 meeting concerning golf clubs and a watch that the debtor did not list on his schedules or statements. At the creditors' meeting the debtor initially testified that he was not holding property of anyone else, nor was anyone else holding any of his property. In fact, the debtor had answered "none" to question 14 on the statement of financial affairs which asks whether the debtor is holding property of another person. In later testimony at the creditors' meeting, however, he stated that golf clubs he owns were at one time held by his brother. The debtor also stated that the watch he was wearing at the §341 meeting was actually another brother's but had been given to him. The debtor's trial testimony regarding these items and the household items was just as evasive and contradictory as it had been at the meeting of creditors. The debtor's bankruptcy attorney, Carvel Sims, also testified. Sims stated that, although he completed the schedules and statements with the information given to him by the debtor, the *detail* of the listing of household goods and furnishings was based on Sims' standard operating procedures. Sims reviewed the schedules and statements with the debtor before the debtor signed them. The lawyer was aware of the separation in property between the debtor and his wife. However, he did not take the time to determine whether each item of household goods was the debtor's or his wife's, accepting as correct that the debtor had listed only what was his own property.

## II. ANALYSIS

The Court has jurisdiction over this proceeding under 28 U.S.C. §1334 and 28 U.S.C. §157(b)(2)(J). The trustee's Complaint alleges that the debtor's discharge should be denied under 11 U.S.C. §§727(a)(2) and (4). In a denial of discharge case, the objecting party has the burden of proving

4

the elements of the objection by a preponderance of the evidence. Bankruptcy Rule 4005; *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). *See also Grogan v. Garner*, 498 U.S. 279, 111 S.Ct 654, 112 L.Ed.2d 755 (1991).

### A. 11 U.S.C. §727(a)(2)

Section 727(a)(2) of the Bankruptcy Code directs the court to deny a discharge to a debtor who has "with intent to hinder, delay or defraud a creditor or an officer of the estate . . . transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." The trustee alleges that the debtor concealed the household goods and furnishings found by the trustee and listed on the trustee's inventory with the intent to hinder, delay or defraud the trustee in violation of §727(a)(2). An objector under this subsection need only show that the debtor acted "with one of three states of mind – a showing of intent to defraud is not necessary." *In re Towe*, 147 B.R. 545, 548 (Bankr. D. Mont. 1992), citing *In re Elholm*, 80 B.R. 964 (D. Minn. 1987). The requisite intent most often is proven by circumstantial evidence and inferences drawn from the actions and conduct of the debtor. *Matter of Hughes*, 184 B.R. 902 (Bankr. E.D. La. 1995), citing *Matter of Chastant*, 873 F.2d 89 (5th Cir. 1989).

Bankruptcy cases operate in reliance on debtors' making full, complete and honest disclosures in schedules and statements. *In re Dreyer*, 127 B.R. 587 (Bankr. N.D. Tex. 1991), citing *Hudson v. Wylie*, 242 F.2d 435 (9th Cir. 1957). The evidence in this case indicates that the debtor failed to make a full and complete disclosure of his assets, and indeed intended to hinder or delay (or both) the discovery of these assets by the creditors or the trustee. Even though he donated his house to his wife in July 1999, the debtor and his wife entered into the separate property regime in May 2001, less than one

year before his bankruptcy filing. Despite his apparent belief that the separate property agreement with his wife extended only to their house and one car, the debtor concealed numerous items of household furnishings from his attorney and the trustee. He also initially tried to conceal the golf clubs and a watch from the trustee, until they were revealed through questioning at the meeting of creditors. The debtor told the trustee at the §341 meeting that the statements and schedules were correct and complete and listed everything that he owned. He admitted at trial that the testimony was incorrect.

The debtor cannot escape responsibility for his conduct by claiming that he relied on his attorney's manner of scheduling assets by grouping items together, rather than providing detailed listings of household goods and furnishings. First, the lawyer stated that he based the schedules on the information the debtor gave him. Second, before signing the schedules and statements, the debtor had the opportunity - and duty - to alert his lawyer to any omitted or incorrect items. Third, reliance on advice of counsel is only a defense to omission of assets from schedules if the debtor has disclosed all the pertinent facts to counsel, and where the debtor's reliance is reasonable and in good faith. *Matter of Perez*, 124 B.R. 704 (E.D. La. 1991), citing *In re Mascolo*, 505 F.2d 274, 277, n.4 (1st Cir. 1974); *Dreyer*, 127 B.R. at 597 (citation omitted). The evidence is that the debtor did not fully disclose all the household goods and furnishings in the residence to his lawyer, instead choosing only to list what *he* thought was his property. The Court is not persuaded that the debtor's claim that he relied on his attorney's preparation of the schedule of household assets was reasonable as it must be to serve as a defense to the debtor's concealment.

The debtor also argued that the assets omitted from the schedules were exempt property and were worth little, so that they need not have been listed. However, property of the estate only becomes exempt after being properly disclosed and being subjected to the scrutiny of the trustee, creditors

6

and the court. The debtor cannot be the sole arbiter of the value of his property or its exempt status. *In re Murray*, 249 B.R. 223, 231 (E.D.N.Y. 2000) ("It is meaningless to say that disclosure is not required because property is exempt.")

The same full disclosure is required of "insignificant" assets. Debtors have an "absolute duty" to reveal whatever property interests they have, even if the debtor deems the interests to be worthless or of little value to creditors. *In re Bailey*, 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992). *See also Oldendorf v. Buckman*, 173 B.R. 99 ( E.D. La. 1994). A debtor who fails to properly schedule assets may not escape a denial of discharge by maintaining that an omitted asset or holding is worthless. "Such a defense is specious." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).

Finally, the Court did not find the debtor's trial testimony on these points credible. This assessment and the evidence indicate that, both pre-petition and post-petition, the debtor decided to furnish only the information regarding his assets that he chose to furnish, and nothing more. The debtor revealed the other assets to the trustee and to his creditors only after his omissions were discovered. The Court concludes that the debtor concealed some of his property from the trustee when he filed his schedules, and continued to conceal estate property from the trustee after he filed bankruptcy, with the intent to hinder or delay the ultimate discovery of those assets, within the meaning of 11 U.S.C. §727(a)(2).

### B. 11 U.S.C. §727(a)(4)

Section 727(a)(4) prohibits a debtor from obtaining a discharge if "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account." Under this section, the objector must prove that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5)

7

the statement related materially to the bankruptcy case." *Beaubouef*, 966 F.2d at 178.  Oaths included in this provision include statements or omissions in the petition or schedules, and statements given by the debtor at an examination during the case. *Hughes*, 184 B.R. at 909.  Under §727(a)(4), "'reckless indifference to the truth is sufficient to sustain an action for fraud.'" *Murray*, 249 B.R. at 228, quoting *In re Dubrowsky*, 244 B.R. 560, 571-72 (E.D.N.Y. 2000). *See also In re Diorio*, 407 F.2d 1330 (2nd Cir. 1969); *In re Scott*, 233 B.R. 32 (Bankr. N.D.N.Y. 1998).  A false oath relates materially to the case "'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992), quoting *In re Olson*, 916 F.2d 481, 484 (8th Cir. 1990).

The evidence showed that the debtor made false statements on his original schedules and statements, and continued to maintain the falsehoods at the meeting of creditors. At trial, he admitted the statements were false.  Moreover, the debtor's false oaths regarding his household goods and furnishings, as well as those concerning the golf clubs and the watch, were materially related to his case within the meaning of §727(a)(4).  The remaining element of proof under §727(a)(4) is whether the debtor had the requisite fraudulent intent.  From the evidence discussed above in relation to the §727(a)(2) claim, the Court finds that the debtor was at least recklessly indifferent to the truth in disclosing his assets.  Another significant factor supporting this conclusion is that the debtor's omissions from his schedules of personal property were not totally corrected despite the filing of amended schedules *even after* the trustee announced that he would be performing an inventory at the debtor's residence. *See Mertz*, 955 F.2d at 598; *Hughes*, 184 B.R. at 910.  As stated very pointedly in *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987), "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to

8

drag the simple truth into the glare of daylight." The debtor's schedules and statements and responses at the meeting of creditors' should have been reliable and accurate. They were neither. Therefore, the Court find that the debtor has made knowing and fraudulent false oaths sufficient to bar his discharge under §727(a)(4).

### III. SUMMARY

Even though a finding that the trustee has met his burden under either §727(a)(2) or (a)(4) would be sufficient to deny the debtor his chapter 7 discharge, the Court finds that the trustee has proven his case under both subsections. Accordingly, the Court will enter judgment in favor of the trustee on his Complaint Objecting to the Discharge of Debtor and will deny the debtor's discharge.

Baton Rouge, Louisiana, November 15, 2002.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE